## PERDUE *v.* PERDUE.

[No. 968S147. Filed April 29, 1970. No petition for rehearing filed.]

*Robert S. Smith, Eugene O. Maley, James E. Marcum, Smith, Maley & Douglas,* all of Indianapolis, for appellant.

*Sidney A. Horn, Frank W. Morton, Morton, Tumbove & Rogers,* all of Indianapolis, for appellee.

GIVAN, J.—The parties in this case were divorced on June 28, 1960. The divorce decree, among other things, granted permanent custody of the parties' minor child, Kathy C. Perdue, to the appellee. On June 22, 1965, the appellee filed a petition for citation against the appellant for failure to pay support. The appellant filed a cross-petition to modify the original custody decree alleging that the appellee was not a fit person to care for the child. It was alleged that Loyde and Louise Fagel, the natural mother and stepfather of the appellee, were fit persons to care for the child. The trial court found that the Fagels had in fact cared for the child for several years and had done so without any support from either the appellant or the appellee. The court, therefore, changed the custody from the appellee to the Fagels.

On May 1, 1967, appellee filed her petition for modification seeking to gain custody of the child from the Fagels on the ground that there had been a change of condition rendering it necessary and advisable that the custody be changed to the appellee. The evidence in this case discloses that the appellant has not contributed to the support of the child in question since his divorce from the appellee. He now seeks a reversal of the trial court's decision awarding custody to the appellee and asking that the custody be returned to the Fagels.

The evidence further discloses that after the custody was originally given to the appellee as above set out, it was changed to her parents on a showing that she was destitute and unable to care for the child, partially due to the fact that appellant had paid no support money. The trial judge in this case had all parties before him, had the opportunity to examine and observe each of them. From his examination and observation he came to the conclusion that it was necessary for the best interest and welfare of the child to return the custody to the appellee. Evidence showed that she had remarried, was no longer destitute and was fully capable of caring for the child. This Court has previously pointed out its reluctance to overturn a trial court's decision in matters of this kind. In a recent decision this Court stated:

"While we are not able to say the trial judge could not have found otherwise than he did upon the evidence introduced below, this Court as a court of review has heretofore held by a long line of decisions that we are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence, or that he should have found its preponderance or the inferences therefrom to be different from what he did.

"On appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is

a basis for reversal." *Brickley* v. *Brickley* (1965), 247 Ind. 201, 204, 210 N. E. 2d 850, 211 N. E. 2d 83.

The appellant cites the cases of *Adams* v. *Purtlebaugh* (1951), 230 Ind. 269, 102 N. E. 2d 499, and *Wible* v. *Wible* (1964), 245 Ind. 235, 196 N. E. 2d 571, 3 Ind. Dec. 104, for the proposition that there must be a substantial showing of a change in conditions occurring since the last decree which are of such a decisive character as to make it necessary for the welfare and happiness of the child to make an additional change. It is stated in *Wible* that the reason for this rule is that "custody should not continually be changed and left uncertain thus creating instability in the living conditions in the children. It is their welfare—not that of the parents— that should be the primary concern of the trial court." We hold that the trial court had ample evidence to make the change in custody in this case giving full consideration to the principles laid down in the *Adams* and *Wible* cases, *supra*.

Appellant assigns as additional error that he was not in- formed of the continuation date of the hearing and was not present on December 13, 1967, when the balance of the evidence was heard and the court decision rendered in this case. The record discloses that the hearing on ap- pellee's petition for change of custody was commenced on October 18, 1967; that appellant was present in person and by counsel, George W. Barger, and that the hearing commenced on that day was continued at the request of appellant and his counsel with no specific date established at that time for the continued hearing. On December 14, 1967, when the hearing resumed, the record is silent as to the whereabouts of the appellant; however, his counsel was present and conducted the examination of witnesses. No issue was made of appellant's absence and no request for continuation made in order to obtain his presence. His absence from the continuation of the hearing is questioned for the first time in his motion for new trial. In the absence of an objection to proceeding in ap- pellant's absence at the continuation of the hearing, this

Court will not presume improper conduct either on the part of appellant's counsel or on the part of the court. We can only presume that it was counsel's considered opinion that appellant's presence was not necessary, and we will not charge the trial court with the responsibility of stopping the proceedings in the absence of a timely objection on the part of appellant's counsel. *Barton* v. *State of Indiana* (1960), 240 Ind. 257, 163 N. E. 2d 600.

The trial court is, therefore, in all things affirmed.

Hunter, C.J., and Arterburn, J., concur; DeBruler, J., dissents with opinion in which Jackson, J., concurs.

### DISSENTING OPINION

DEBRULER, J.—The parties to this appeal were divorced on June 28, 1960, and by the terms of their divorce decree entered on that day, the appellee was granted the permanent custody of the minor child of the parties, Kathy C. Perdue, born July 10, 1959. Appellant was ordered to pay support and was awarded custody of the other child of the parties, Gary P. Perdue, a minor male child, not involved in this case.

Thereafter on June 22, 1965, this same court held a hearing on a petition filed by the appellee for citation against appellant for failure to pay support and on a cross-petition of the appellant to modify the original custody decree. Appellant alleged that appellee was not a fit person to care for Kathy but that Lloyd and Louise Fagel the natural mother and stepfather of appellee were fit persons to care for her. The trial court found that the Fagels had cared for Kathy for several years, except for one five week period, without any support from appellant or appellee and that there had been a change of circumstances in the case since the June 28, 1960 decree sufficient to justify a change of custody from appellee to the Fagels. Upon these findings the trial court ordered that the original custody decree be modified and changed the permanent custody of Kathy from the appellee to the Fagels.

On May 1, 1967, appellee filed a petition for modification seeking custody of Kathy from the Fagels on the grounds that since the decree of June 22, 1965, "conditions have materially changed and that such changed conditions and circumstances render it necessary and advisable that the provisions for the custody and control of said child be reviewed and altered" to give custody to appellee. The trial court held a hearing and found that the allegation of appellee's petition was "true and that good and substantial cause for change of conditions exists to justify awarding to the petitioner, Lois Louise Goodman (formerly Perdue) the care and custody of her minor child, Kathy C. Perdue, 8 years of age, forthwith." The trial court so ordered and appellant now seeks review of that order.

Appellant alleges that there was insufficient evidence to sustain the decision of the trial court and the decision was contrary to law. On a challenge to the sufficiency of the evidence, it is well settled that this Court will not re-weigh the evidence nor resolve conflicts in the testimony. We look at the evidence most favorable to the appellee, and any reasonable inferences therefrom, and see if there is evidence to sustain the trial court's decision. *Brown* v. *Beachler* (1946), 224 Ind. 437, 68 N. E. 2d 915.

Appellee alleged that since the last decree there had been a change of conditions making it necessary that the custody of Kathy be placed in appellee. The evidence presented to support this allegation was that since the last decree the following changes have occurred in appellee's life which now make her a fit and proper person to have the custody of Kathy: (1) Appellee married Harold Dean Goodman on March 12, 1966. Mr. Goodman testified that he was a clerical employee of Cummins Diesel Corporation at $2.75 per hour and that he took home $125 to $150 per week. (2) Appellee and her husband now live in a six room house with three bedrooms at 1220 Olney in Indianapolis, thus permitting Kathy to have a room of her own. (3) Appellee quit working in August,

1966, and can, therefore, look after the child. (4) Since the last decree appellee has her son on weekends more often than before.

The magnitude and permanence of these changes may be questionable, however, I would not decide this point because I believe that even if it be granted that appellee is now an equally fit person to have custody of Kathy that is not decisive in this case. This case is controlled by the principle that the appellee must show that the change in conditions occurring since the last decree are of such a decisive character as to make it *necessary for the welfare and happiness of the child,* that the requested change in custody be made. *Adams* v. *Purtlebaugh* (1951), 230 Ind. 269, 102 N. E. 2d 499; *Wible* v. *Wible* (1964), 245 Ind. 235, 196 N. E. 2d 571.

In *Adams* v. *Purtlebaugh, supra,* this Court in refusing to change custody to the mother from a non-parent, said:

> "It has been a fixed policy of the courts to arrange for custody of children of divorced parents on a basis of permanence to the extent that conditions will permit. Providing of course for visiting periods for the parent not having custody. *This is on the theory that a permanent residence is best for the welfare and happiness of the child.* (Emphasis added.) 230 Ind. at 275.

In *Wible* v. *Wible, supra,* this Court reversed a trial court which, on the petition of the husband, had modified a previous custody decree that had placed the custody in the mother saying:

> "There was no evidence nor finding that the appellant mother was of bad moral character or that she was an unfit person to have the custody of the children. True another judge heard the petition to modify. However, that incident emphasizes to us the importance of the principle that a modification of a permanent order of custody cannot be made without a showing of substantial change in conditions which affect the welfare of the children. Adams v. Purtlebaugh. . . .
>
>               * * *
>
> "There is reason and logic in such a principle of law. The purpose of such a rule in the law is that the welfare of

the children and their *custody should not continually be changed and left uncertain thus creating instability in the living conditions in the children. It is their welfare—not that of the parents—that should be the primary concern of the trial court."* (Emphasis added.) 245 Ind. at 240, 241.

See also *Brickley* v. *Brickley* (1965), 247 Ind. 201, 210 N. E. 2d 850; *Morrison* v. *Morrison* (1960), 130 Ind. App. 270, 164 N. E. 2d 113; *Brown* v. *Beachler, supra; Beach* v. *Leroy* (1949), 228 Ind. 122, 89 N. E. 2d 912.

Of course, this rule only applies when the contest for custody is between natural parents or between one parent and persons who have given and are in a position to continue to give the child a stable, loving home similar to one provided by normal parents. This would clearly exclude the case where the child is taken from the parents by the State due to circumstances beyond the control of the parents and placed in an institution or boarded out in a foster home. In that case the welfare of the child probably would require that the custody be changed to the natural parent who had reformed or recently became a fit and proper person to have such custody. This is not the situation in the case before us.

The decree rendered on June 22, 1965, found that the Fagels were the fit and proper persons to have care and custody of Kathy. The evidence in this hearing showed that the Fagels have a nice home on an acre and one-half of land with a separate room for Kathy. They have cared for her for six and one-half years, with the exception of one five week period, without any support from the appellee or appellant. According to appellee's own testimony she voluntarily placed Kathy with the Fagels in early 1961 and on June 22, 1965, the trial court gave them legal custody of Kathy. Appellee has never challenged the capacity or the fitness of the Fagels to care for Kathy and provide her with a stable, loving home. In fact at the hearing appellee testified as follows:

"Q. Does your little girl love the Fagels?
A. She does, yes.

Q. Is she happy in their home?
A. I suppose so.

\* \* \*

Q. And you're telling this Court that she is attached to the Fagels?
A. Yes, she is attached to them.
Q. She loves them, does she not?
A. I suppose she does.
Q. Hasn't she told you that she does?
A. She has before, yes.

Since her situation is the same as it was when the court gave legal custody to the Fagels then *her* welfare would not require a change. The changes in *appellee's* circumstances are not changes so decisive as to *require* a change of custody for the welfare and happiness of the *child*.

I would hold that there is absolutely no evidence of any change in conditions occurring since the last decree which was so decisive as to require a change of custody for the welfare and happiness of the child.

Appellant raises a second issue which should be discussed. Appellant had notice and was personally present at the first hearing on October 18, 1967. At the close of that hearing the case was continued but no date was set at that time. Appellant claims that he was not given any notice of the second hearing held on December 13, 1967, and, therefore, was not present to testify and present witnesses. As the father of the child appellant had a right to be notified of the hearing date so that he could participate in the proceedings. *State* v. *Achor* (1947), 225 Ind. 319, 75 N. E. 2d 154. However, appellee argues that appellant was represented at both hearings by Mr. Barger, the same counsel who presented the case for the Fagels and who cross-examined appellee's witnesses.

I would agree that if appellant was represented by Mr. Barger in this cause then notice to him would have been sufficient. However, it is unclear from this record whether

Mr. Barger was representing the Fagels *and* appellant, or just the Fagels. Since the appellant's interests are not necessarily identical with the Fagels and could be in conflict, it should be made clear in the record which counsel is representing the Fagels and which counsel, if any, is representing appellant.

The order of the trial court changing the custody of Kathy C. Perdue from Mr. and Mrs. Fagel to appellee should be reversed and the trial court ordered to grant the appellant's motion for new trial.

Jackson, J., concurs.

NOTE.—Reported in 257 N. E. 2d 827.