GERALDINE LANDING *v*. JAMES E. LANDING.

[No. 272A87. Filed July 5, 1972.]

*John A. Kocher, Robert W. Gilmore, Jr., Kenefick and Brennan,* of Michigan City, for appellant.

*Marcellus B. Meyer,* of Michigan City, for appellee.

HOFFMAN, C.J.—The issue presented by this appeal is whether the father of a minor child met his burden of proof in a proceeding instituted by him to modify a prior order of child custody.

On September 26, 1969, the appellant-mother and appellee-father were granted a decree of absolute divorce by the La-Porte Superior Court, No. 1. The appellant-mother was given, *inter alia*, custody of the four minor children of the parties and a rent-free lease of their dwelling-house.

On February 10, 1970, the trial court found that three of the minor children of the parties had been emancipated, leaving one minor child to be supported. The trial court accordingly modified the support order.

On August 4, 1971, the father filed his verified petition for change of child custody alleging, *inter alia*, that since the decree of divorce was rendered the conditions and circumstances of the parties have changed so as to warrant, in the best interest and welfare of said minor child, a modification of the divorce decree, that the mother is not a fit and proper person to have the care and custody of such minor child, and that in the best interest of the minor child his custody should be awarded to the father.

Following the appointment of a special judge, a hearing was held on the father's petition for change of child custody. Thereafter, the trial court granted the petition of the father-appellee to modify the decree, and he was given the care, custody and control of the minor child, subject to reasonable visitation rights of the mother-appellant. The motion to correct errors filed by the mother was overruled, and this appeal followed.

In *Partridge* v. *Partridge* (1971), 257 Ind. 81, 272 N. E. 2d 448, at 451, it was stated:

"The law in Indiana is well established that any modification of a custody order must be based upon a change of circumstances occurring after the initial order, which renders the contemplated change necessary for the welfare

of the child. The burden is on the party seeking the modification of the decree to prove such changes. Perdue v. Perdue (1970), 254 Ind. 77, 257 N. E. 2d 827, 21 Ind. Dec. 188; Brickley v. Brickley (1965), 247 Ind. 201, 210 N. E. 2d 850, 6 Ind. Dec. 572; Wible v. Wible (1964), 245 Ind. 235, 196 N. E. 2d 571, 3 Ind. Dec. 104; Adams v. Purtlebaugh (1951), 230 Ind. 269, 102 N. E. 2d 499.

\* \* \*

"As was stated by this Court in Wible, *supra:*

'There is reason and logic in such a principle of law. The purpose of such a rule in the law is that the welfare of the children and their custody should not continually be changed, and left uncertain, thus creating instability in the living conditions of the children. It is their welfare—not that of the parents—that should be the primary concern of the trial court.' 245 Ind. 235, 241, 196 N. E. 2d 571, 574."

The modification of an order of child custody must be grounded on the well-being and best interests of the child. An order of child custody must stand so long as the conditions under which the order was made continue to exist. It is not in the best interests of a child of tender years to be made the ball in a legal game of ping pong between litigious parents. However, when it can be shown by the petitioning party that such changes have taken place that the prior order is no longer in the best interests of the child, the prior order must, and should be modified.

There is testimony in the record before us showing that the mother had taken the child from the rent-free, three-bedroom, one and one-half bath home awarded her by the divorce decree to live with her parents in South Bend. There they lived with the child's maternal grandparents in a small two-bedroom home with no bathroom, only a toilet. The father testified that when he would pick up the boy in South Bend the boy would have a "[d]irty head, dirty hair, dirty ears, blackheads, dirty feet, dirty toe nails [toenails], dirty finger nails." The father also testified as follows:

"Q. Describe what happens when he is here with you.

"A. I would say when he is with us he is a perfectly normal, healthy young 10-year old American boy.

"Q. Any change in that condition when you return him to his mother's home?

"A. Get within one block of the house when we take him back and he changes like a clam.

"Q. What do you mean by that?

"A. He won't speak, he is extremely fidgety, begins making hand motions, all kinds of exhibits of little tic-like affairs; clinching of fists and things of this type that are always symptomatic of anxiety and tension.

\* \* \*

"Q. Can you describe your son's health the last year or so since he has been over there?

\* \* \*

"A. Yes. Physically I see no great difference. He seems to be growing. Psychologically I see a great deal of difference. Rather traumatic, in fact. He is not the same boy who lived at 109 Case Street in Michigan City.

\* \* \*

"Q. Mr. Landing, tell the court why you filed this action asking the court to give you custody of William.

"A. I filed this action because based on the observations of my son over a period of a year and-a-half's absence from 109 Case Street, Michigan City, I feel that his emotion, psychological condition is becoming quite precarious. Had his relationship with me not been strained, had these anxieties and tensions not been created by his mother, had there been a free, loose relationship, had there been no apparent effort to pit him against me, I would have not filed this custody suit. I have no reason other than the welfare of my son to want him to reside at my home. If he were happy where he was then I would not interfere.

"Q. You feel he is not happy?

"A. I know he is not.

"Q. Are you worried about him?

"A. I am quite concerned about him. I think within a year or so he will need very definite psychological assistance of competent professional nature."

There is other testimony in the record to the effect that the boy's present environment is unfavorable and that the

boy is adversely affected thereby. There is other testimony that would lead to the exactly opposite conclusion.

In *Brickley* v. *Brickley* (1965), 247 Ind. 201, at 204, 210 N. E. 2d 850, at 852, our Supreme Court held:

> "While we are not able to say the trial judge could not have found otherwise than he did upon the evidence introduced below, this Court as a court of review has heretofore held by a long line of decisions that we are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence, or that he should have found its preponderance or the inferences therefrom to be different from what he did.

> "On appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal." (Citing authorities.) (Footnote omitted.)

The mother contends that the father failed to show the circumstances existing at the time of the prior custody order and therefore, failed to show a change of conditions. The uncontroverted testimony shows that three of the four children whose custody was awarded to the mother had been emancipated. Although the reasons for the change in residence are in dispute, it is undisputed that the mother moved from the rent-free house awarded her by the divorce decree to the home of her parents in South Bend. There is conflicting evidence as to whether the boy's surroundings were having an adverse affect on his psychological well-being. There is evidence that the father is remarried and the family home is in Michigan City. We cannot weigh the evidence contained in the record before us, however, we have given the record careful consideration. We find that it contains sufficient evidence to support the conclusion of the trial court that there was a change of conditions and that the welfare of the child necessitated the modification of the custody order.

The trial court did not err in overruling the motion to dismiss filed by the mother-appellant at the conclusion of the father-appellee's evidence.

The judgment of the trial court is affirmed.

Judgment affirmed.

Sharp and Staton, JJ., concur.

NOTE.—Reported in 284 N. E. 2d 857.